IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MELINDA B. LONIZA, | Civil No. 23-00352 MWJS-RT |
| Plaintiff, | ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| vs. | |
| MICHELLE KING,[1] Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

At a hearing before an Administrative Law Judge, or ALJ, Plaintiff Melinda B.

Loniza testified that she suffered severe symptoms from mental and physical

impairments.  If credited, this testimony would have helped to establish that Loniza

was entitled to Social Security disability benefits.  The ALJ rejected the testimony,

however, finding that Loniza had received conservative medical treatment and that this

conservative treatment undermined Loniza's testimony that her symptoms were severe.

Proceeding pro se, Loniza now appeals the ALJ's decision denying her

application for benefits.  The threshold question is whether the Court may construe

---

[1]      On January 21, 2025, Michelle King was named Acting Commissioner of the
Social Security Administration.  She therefore is substituted as the Defendant in this
action.  *See* 20 C.F.R. § 422.210(d) ("[T]he person holding the Office of the Commissioner
shall, in [their] official capacity, be the proper defendant.").

Loniza's admittedly terse pro se brief to raise legal arguments that she does not herself articulate, but are consistent with her factual assertions—indeed, implied by her assertions.  The answer is yes.  Pro se litigants are at an enormous disadvantage in navigating the Social Security system, which is complicated enough for trained attorneys.  When, as here, a pro se litigant asserts that her hearing testimony was credible, the Court has the discretion to consider whether the ALJ met applicable legal standards in rejecting that testimony.

The Court therefore considers (1) what legal standard the ALJ was required to satisfy to reject Loniza's testimony on the ground that she had received conservative treatment, and (2) whether the ALJ satisfied that legal standard here.  To summarize the Court's rulings upfront:  The Court concludes that when an ALJ rejects a claimant's symptom testimony on the ground that the claimant received "conservative" medical treatment, the administrative record must contain evidence that more aggressive treatment was available.  That is because one cannot rationally label treatment as "conservative" when there is no evidentiary basis to say it was less aggressive than other available treatment.  But the Court also concludes that, in this case, the administrative record does contain evidence that less conservative treatment options were available.  In light of that evidence, the Court must defer to the ALJ's determinations.  The Court therefore AFFIRMS the Commissioner's denial of Loniza's application for benefits.

## BACKGROUND

1.   Loniza applied for disability benefits in October 2019.  When those claims were denied, she asked for a hearing.  The Commissioner generally assigns the task of conducting administrative hearings to ALJs.  In this case, an ALJ initially scheduled a hearing for June 2021.  The hearing did not go forward, however, because Loniza was not sure whether she wanted to "try to get a representative" to help her.  ECF No. 14-3, at PageID.75 (Administrative Record (AR) at 35).

The hearing was rescheduled for March 2022.  At the beginning of that rescheduled hearing, the ALJ asked Loniza if she had "tried to look for a representative or not?"  *Id.* at PageID.76 (AR at 36).  After Loniza answered that she had not done so, the ALJ asked her whether she "might want a representative," in which case the hearing could be rescheduled again.  *Id.*  After being advised that this would likely be her only hearing, but that she would have the right to appeal, Loniza decided to "try today."  *Id.* at PageID.77 (AR at 37).

Loniza then tried to answer the ALJ's questions.  She explained, among other things, that she had initially gotten hurt at work.  *Id.* at PageID.85 (AR at 45).  She managed to return to work for light duty, but left early on her first day back because she was sore, and then, on her way home, someone hit her car.  *Id.*  At the time of the ALJ hearing, Loniza had not worked since that accident.  *Id.*  And she reported struggling with both mental and physical impairments.  The physical impairments,

Loniza explained, affected her shoulders, back, and neck.  *Id.* at PageID.89 (AR at 49).

In Loniza's view, these impairments precluded her from working.

Previously, Loniza had worked as a home health aide, and at the hearing, a

vocational expert testified that she would no longer be capable of performing that work

full time.  *Id.* at PageID.94 (AR at 54).  The vocational expert opined, however, that a

person with limitations the ALJ described could still perform at least three jobs that are

available in significant numbers in the national economy:  an assembler of small

products, an office helper, and a routine clerk.  *Id.*

After hearing the vocational expert's testimony, Loniza interjected that she

suffered from mental impairments and added that she "cannot even deal with [her]

paperwork," suggesting that her application for disability benefits might not be

complete.  *Id.* at PageID.98-99 (AR at 58-59).  The ALJ therefore invited Loniza to

supplement the record with any documents, or even simply provide the names of

relevant doctors, within the next fourteen days.  *Id.* at PageID.99-102 (AR at 59-62).  But

the ALJ warned Loniza that if she did not provide any supplementation within fourteen

days, the ALJ would make a decision "based on what we currently have" in the record.

*Id.* at PageID.102 (AR at 62).

2.   Ultimately, Loniza does not appear to have attempted to supplement the

record.  And on August 31, 2022, the ALJ issued a thirteen-page written decision

denying Loniza's application.  *Id.* at PageID.50-65 (AR at 10-25).  The ALJ agreed with

Loniza that she suffered from a number of severe mental and physical impairments.  *Id.*
at PageID.56 (AR at 16).  The physical impairments included "degenerative changes of
the cervical spine with spondylosis; degenerative changes of the facet joints of the
lumbar spine; right shoulder adhesive capsulitis with degenerative changes; strain of
the thorax muscle and tendon; [and] bilateral type 2 acromia of the shoulders."  *Id.*  And
the mental impairments included "obsessive compulsive disorder; bipolar disorder;
trichotillomania; hoarding disorder; anxiety disorder; posttraumatic stress disorder; and
depression."  *Id.*  But the ALJ concluded that these impairments did not "meet or
medically equal" listed impairments that would allow a finding of disability without
regard to Loniza's residual functional capacity, or RFC.  *Id.* at PageID.57 (AR at 17).[2]
The ALJ therefore proceeded to consider Loniza's RFC and concluded that, in spite of
her severe impairments, she still could perform light work with certain restrictions.  *Id.*
at PageID.59 (AR at 19).  In light of her ability to perform light work, the ALJ found that
Loniza could perform any of the three jobs the vocational expert had identified.  *Id.* at
PageID.64 (AR at 24).

The ALJ recognized that Loniza had testified to suffering greater limitations from
her severe impairments.  And the ALJ found no evidence of malingering.  But the ALJ
found that Loniza's "statements concerning the intensity, persistence and limiting

---

[2]      The RFC is a measure of "the most one can still do despite one's limitations."
*Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (cleaned up).

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at PageID.60 (AR at 20). Critically, the ALJ reasoned that although Loniza had received "routine treatment for her symptoms" from various providers, "the medical record shows that such treatment was primarily conservative in nature, often in the form of recommendations for medications and follow up visits." *Id.* at PageID.61 (AR at 21). Based on this medical evidence, the ALJ found that Loniza's "mostly conservative treatment suggests that her limitations and symptoms could be controlled by compliance with her regimen and routinely following up with her providers." *Id.*

The ALJ also relied on "the opinions of the State agency reconsideration level medical consultants," which the ALJ found to be "persuasive." *Id.* The medical consultants had found that Loniza could perform light work. And the ALJ found their opinions persuasive because the consultants "had the opportunity to review the overall medical record, and their opinions are supported by such review," and were "consistent with the overall medical record." *Id.* It is unclear, however, whether the opinions of these medical consultants offer sufficient grounds for the ALJ to reject the credibility of Loniza's symptom testimony, which they had no occasion to review.

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891

F.3d 872, 875 (9th Cir. 2018).  And while "substantial" means "more than a mere

scintilla," it requires "only such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022)

(cleaned up).  This standard "is not high," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), and

"if evidence exists to support more than one rational interpretation," the Court "must

defer to the [ALJ's] decision," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 &

n.1 (9th Cir. 2004).  Ultimately, the "ALJ is the final arbiter with respect to resolving

ambiguities in the medical evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008).

These review standards are deferential because, "[f]or highly fact-intensive

individualized determinations like a claimant's entitlement to disability benefits,

Congress places a premium upon agency expertise, and, for the sake of uniformity, it is

usually better to minimize the opportunity for reviewing courts to substitute their

discretion for that of the agency."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1098 (9th Cir. 2014) (cleaned up).

<u>DISCUSSION</u>

### A.    Courts Are Permitted to Construe a Pro Se Litigant's Briefs to Raise the Strongest Arguments They Reasonably Suggest

Before turning to the merits of Loniza's appeal, the Court must resolve a

threshold question:  whether the Court may consider a legal argument that is consistent

with Loniza's assertions, but which she does not specifically advance in her pro se submissions.

1.  As noted, this Court's review of an ALJ's findings is highly deferential.  But it is not toothless.  For example, when an ALJ finds that a claimant is not malingering but instead has a severe impairment "which might reasonably produce the pain or other symptoms alleged," an ALJ can "reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up); *see also Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996) (explaining that where there is no affirmative evidence of malingering, an ALJ may reject a claimant's testimony regarding the severity of pain "only if [the ALJ] makes specific findings stating clear and convincing reasons for doing so").  Those reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Brown-Hunter*, 806 F.3d at 493 (cleaned up).

Needless to say, pro se litigants are not always well-versed in these complex legal standards.  In this case, for example, Loniza's submissions contend that the ALJ's decision "should be overturned" because Loniza has a "multitude of mental illnesses that severely affect[] every aspect of [her] day to day living."  ECF No. 27, at PageID.1233 (capitalizations omitted).  She adds that, "in addition to the above [she]

8

live[s] with chronic pain every day"—pain which prevents her from "doing the simplest task necessary for daily living and obtaining gainful employment."  *Id.* Through these arguments, Loniza has put the ALJ's rejection of her symptom testimony squarely at issue, and her argument, in turn, logically implicates the question of whether the ALJ met applicable legal standards in rejecting that testimony.  But Loniza herself does not cite the "clear and convincing reasons" standard or make particularized arguments under that standard.

And so the question is whether the Court may consider whether the ALJ has met the relevant legal standards, even though Loniza did not specifically make those legal arguments herself.  The Court invited the Commissioner to submit a supplemental brief addressing this question, and the Commissioner has done so.

2.   In the Commissioner's view, although Loniza's pro se submissions have endeavored to challenge the ALJ's rejection of her symptom testimony, the Court is altogether *prohibited* from considering the closely related question of whether the ALJ complied with the legal standards governing the rejection of such testimony.  ECF No. 33, at PageID.1252-53.  According to the Commissioner, "a reviewing court will not consider an issue that a claimant fails to argue 'with any specificity' in briefing."  *Id.* (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)).  And because Loniza does not cite the legal standards or make specific arguments under

those standards, in the Commissioner's view, it is "*impermissible*" for the Court to

consider them under *Carmickle*.  *Id.* at PageID.1253 (emphasis added).

It is difficult to find support for the Commissioner's parsimonious approach

toward pro se submissions in *Carmickle*.  After all, *Carmickle* involved not a pro se

litigant, but a counseled one.  533 F.3d at 1157.  One cannot readily understand

*Carmickle* as creating a restrictive rule for construing pro se briefs when the litigant in

that case was not proceeding pro se.  And even if *Carmickle* had involved a pro se

litigant, it still would be a thin reed on which to rest the Commissioner's argument.

*Carmickle* clearly does not establish that it is "impermissible"—as the Commissioner

puts it—to consider issues a litigant has not specifically raised.  To the contrary, the

Ninth Circuit indicated only that it was *choosing*, in that case, not to address issues the

appellant had not argued with specificity in his brief.  That much is clear from the Ninth

Circuit's statement that it "*ordinarily* will not consider matters on appeal that are not

specifically and distinctly argued in an appellant's opening brief."  *Id.* at 1161 n.2

(emphasis added) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164

(9th Cir. 2003)).  Given its use of the word "ordinarily," *Carmickle* cannot be viewed as

having established a rule that it is *always* impermissible to consider such matters.  At a

minimum, it did not create such a rule for pro se litigants.[3]  *See Prear v. Berryhill*, No.

---

[3]      The Commissioner separately quotes *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003), for the proposition that courts "cannot manufacture arguments for [a party] and therefore . . . will not consider any claims that

CV-17-02028, 2018 WL 3439823, at *4 (D. Ariz. July 17, 2018) (recognizing that

*Carmickle*'s statement that courts "[o]rdinarily" do not address issues not argued with

specificity is "[o]f course . . . relaxed when a party is proceeding pro se" (emphasis

omitted)); *Abdul v. Astrue*, 09-CV-1304, 2010 WL 5018139, at *3 (D. Or. Dec. 3, 2010)

(reviewing the ALJ's decision for legal error despite pro se plaintiff's failure to identify

alleged errors with specificity and despite *Carmickle*).

    3.   Rather than cases dealing with the appellate briefs of counseled parties, the

better source of authority is the line of cases providing guidance on how to construe the

submissions of pro se litigants.  There, the Ninth Circuit has been clear about the duty

of courts to "liberally construe the pleadings and efforts of pro se litigants, particularly

where highly technical requirements are involved."  *United States v. Ten Thousand*

*Dollars ($10,000.00) in U.S. Currency*, 860 F.2d 1511, 1513 (9th Cir. 1988) (holding that

where a pro se litigant requested relief, it was appropriate to construe the request, more

technically, as a request for a stay); *see also Hopkins v. Berryhill*, 697 F. App'x 892, 892 (9th

Cir. 2017) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc), for

the principle that the Court has "an obligation where the petitioner is pro se . . . to

construe the pleadings liberally and to afford the petitioner the benefit of any doubt").

---

were not actually argued in [the] opening brief."  ECF No. 33, at PageID.1253 (cleaned
up).  Here again, it is clear that the Ninth Circuit's ire was directed, not at pro se
litigants, but at counsel:  "However much we may importune *lawyers* to be brief and to
get to the point, we have never suggested that they skip the substance of their argument
in order to do so."  *Indep. Towers of Wash.*, 350 F.3d at 929 (emphasis added).

"The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if . . . not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).[4]

Applying these cases, the Court concludes that in considering Loniza's argument that her symptom testimony is credible, it is permissible to consider whether the ALJ rejected that testimony in a manner consistent with applicable legal standards.

Furthermore, the Court concludes it is appropriate to take that step here. To begin with, the record makes clear that Loniza not only proceeded entirely pro se, but that she was uncomfortable doing so. Indeed, she ultimately agreed to go forward with the hearing pro se only after being assured that she would have the right to appeal. *See* ECF No. 14-3, at PageID.77 (AR at 37). Moreover, Loniza's own pro se submissions do effectively contend that her symptom testimony was credible. The Court therefore need only construe those submissions liberally to view them as teeing up the question of whether the ALJ—in rejecting the credibility of that testimony—properly complied with the governing legal standards. And, importantly, although Loniza's terse pro se brief did not raise arguments concerning these legal standards, the Court has afforded the

---

[4]     The Commissioner acknowledges that courts "make reasonable allowances for pro se litigants" and "read pro se papers liberally," ECF No. 33, at PageID.1252 (quoting *McCabe v. Arave*, 827 F.2d 634, 640 n.6. (9th Cir. 1987)), but, as noted, the Commissioner then argues (unpersuasively, in this Court's view) that these allowances must be cabined by a "specificity" rule gleaned from *Carmickle*, *id.* at PageID.1253.

Commissioner an opportunity to address these legal standards through supplemental briefing.  *See* ECF No. 33.  The Court therefore turns to those legal standards.

**B.    A Course of Medical Treatment May Rationally Be Labeled as "Conservative" Only if There Is an Evidentiary Basis for Concluding that More Aggressive Treatment Alternatives Were Available**

In this case, the ALJ's principal reason for rejecting Loniza's symptom testimony was that while Loniza had received "routine treatment for her symptoms" from various providers, "the medical record shows that such treatment was primarily conservative in nature, often in the form of recommendations for medications and follow up visits." ECF No. 14-3, at PageID.61 (AR at 21).  The first step in assessing whether this qualifies as a specific, clear, and convincing reason for rejecting Loniza's symptom testimony is to determine what is required to rationally label a course of medical treatment "conservative."

A panel of the Ninth Circuit—in an unpublished decision—has taken the commonsense view that an ALJ cannot reject symptom testimony on the ground that a claimant received only conservative treatment when "the record does not reflect that more aggressive treatment options [we]re appropriate or available."  *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010).  As that panel put it, a "claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Id.*

This reasoning, though not binding, is persuasive.  One cannot rationally call a course of medical treatment "conservative" if it is, in fact, the most aggressive treatment available.  If a doctor were to advise a patient to follow a "conservative" course of treatment, one would reasonably expect the patient to wonder what more aggressive treatments are being contraindicated.  And if, in response to a patient's query, the doctor answered that the "conservative" treatment is in fact the most aggressive one available, the patient would sensibly wonder about the doctor's competence.

Of course, the question here is not whether a physician has detailed more aggressive treatments but merely whether substantial evidence supports the ALJ's determination that Loniza's treatment was conservative.  Accordingly, if the administrative record contains statements from physicians describing a course of treatment as conservative, an ALJ would act rationally in inferring that the physician was aware of more aggressive treatment options—even if the records do not detail those options (as they, presumably, rarely do).  But regardless of what form the evidence takes, before a Court may affirm an ALJ's conclusion that treatment was conservative, there must be substantial evidence in the administrative record to support the conclusion that more aggressive treatment options were available.

The Commissioner resists this logic, arguing that "Social Security cases are highly fact specific" and that *Lapierre-Gutt* is "readily distinguishable."  ECF No. 33, at PageID.1254.  It is true that *Lapierre-Gutt* is factually distinct, but those factual

14

differences do not call into question the opinion's general definition of "conservative" treatment as something short of a more aggressive alternative. When a court articulates a legal principle, a party seeking to resist that principle may argue that it is legally unpersuasive or unfounded (or that it should be understood in a particular way), but it will not do merely to point out that the precedent involved distinguishable facts.

The Commissioner also quotes *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), for the proposition "that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." ECF No. 33, at PageID.1254 (cleaned up). But the question is not whether severity testimony may be impeached through evidence of conservative treatment; there is no question, at least in the Ninth Circuit, that it can. The question here is, instead, what qualifies as conservative treatment. Nothing in *Parra* suggests that an ALJ can characterize a course of treatment as conservative when the evidence in the record—or, at a minimum, inferences fairly drawn from that record—do not reflect that a more aggressive treatment option was available.

The Court therefore concludes that when an ALJ rejects a Social Security claimant's severity testimony on the ground that the claimant received conservative treatment, the Court may affirm that reasoning only if the administrative record contains substantial evidence that the treatment was in fact conservative—that is, that at least one more aggressive treatment option was available. *See, e.g.*, *Christin D. v.*

*Kijakazi*, No. 23-cv-01953, 2024 WL 4132436, *5 (D. Nev. Sept. 10, 2024) ("[A]n ALJ errs in

relying on conservative treatment if the record does not reflect that more aggressive

treatment options are appropriate or available." (citing *Lapeirre-Gutt*, 382 F. App'x at

664)); *Boitnott v. Colvin*, No. 14cv2977, 2016 WL 362348, at *4 (S.D. Cal. Jan. 29, 2016)

(rejecting ALJ's conclusion that plaintiff's treatment was conservative where there was

no evidence in the report that "more aggressive courses of treatment were available").

### C.    Substantial Evidence Supports the ALJ's Determination that Loniza Received a Conservative Course of Treatment

The remaining question is whether substantial evidence supports the ALJ's

conclusion that Loniza received conservative treatment.  On this point, the Court agrees

with the Commissioner that the ALJ's determination rests on sufficient record evidence.

For example, medical records indicate that in December 2021, a physician met

with Loniza to discuss her right shoulder pain and "chronic capsulitis."  ECF No. 14-8,

at PageID.1140 (AR at 1094).  After discussing possible "[t]reatment options," as well as

"risks/benefits," the medical records reflect that Loniza "elect[ed] to continue

conservative [m]easures."  *Id.*  Although the records themselves do not document

precisely what more aggressive treatment options were available, they suffice to

support the inference that such options did indeed exist.

Similarly, medical records from March 2020 show that a physician described

Loniza as not yet having tried a "robust therapy regimen" for her mental health

conditions.  *Id.* at PageID.615 (AR at 569).  These records similarly support an inference that more robust regimens were available, but not taken.

And Loniza's own submissions lend further support to the conclusion that more aggressive treatment options were available; she does not argue that the treatment she received was the most aggressive treatment available.[5]  Instead, she honestly concedes that she was "not seeking treatment as much as [she] needed to due to severe depression."  ECF No. 36, at PageID.1263.

Although this Court conceivably could have credited this explanation—which appears to be an understandable one—had it sat as fact finder, it cannot do so here, for it must defer to the ALJ's conclusion that Loniza's decision not to seek the most aggressive treatment options available undermined the credibility of her severity testimony.[6]

---

[5]    In her supplemental brief, Loniza suggests that "[u]pon reviewing the denial from the ALJ, [she] did not see a recommendation for more aggressive treatment, nor was any treatment provided to [her] from medical providers."  ECF No. 36, at PageID.1263.  But as explained above, the medical records support the ALJ's determination that more aggressive treatment was available, but not taken.  And Loniza's brief goes on to say that she did not seek such treatment due to depression.  *Id.*

[6]    The Commissioner offers a separate argument to support the ALJ's determination:  that the ALJ separately relied on the opinions of medical consultants.  ECF No. 29, at PageID.1242; ECF No. 33, at PageID.1256-58.  But it is unclear to what extent these consultants truly offered sufficient grounds to reject Loniza's symptom testimony, which they understandably had no occasion to review.  Given the Court's conclusion that the ALJ's decision may be affirmed on other grounds, the Court declines to resolve whether the medical consultants' opinions would serve as an independently sufficient ground for affirmance.

## <u>CONCLUSION</u>

To recap the Court's rulings:

(1)   Although Loniza herself did not make any arguments about the legal standards governing an ALJ's rejection of symptom testimony, the Court concludes that it has the discretion to consider those issues—and it has exercised its discretion to do so in this case.

(2)   Under those legal standards, an ALJ cannot reject symptom testimony on the ground that the claimant received conservative treatment unless the administrative record contains substantial evidence that the treatment was in fact conservative—that is, that at least one more aggressive treatment option was available.

(3)  Applying those legal standards to this case, the Court concludes that the administrative record does contain such evidence here.

The Court therefore AFFIRMS the ALJ's decision denying Loniza's application for Social Security disability benefits.

IT IS SO ORDERED.

DATED:  February 7, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 23-00352 MWJS-RT; *Melinda B. Loniza v. Michelle King*; ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY